**Otto T. SCHWAB**

v.

**ERIE LACKAWANNA RAILROAD COMPANY, Appellant, and S. J. Groves and Sons Company**

v.

**Mildred A. SAUERS, Admx. of the Estate of William Sauers, Deceased, Frank Pulling, and Walmer Trucking Company.**

**No. 18701.**

United States Court of Appeals, Third Circuit.

Argued Oct. 29, 1970.

Decided Feb. 2, 1971.

George I. Buckler, Meyer, Darragh, Buckler, Bebenck & Eck, Pittsburgh, Pa., for appellant.

Theodore E. Breault, Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for Walmer Trucking Co.

Richard A. Levick, Knox, Graham, Pearson & McLaughlin, Erie, Pa. (John M. McLaughlin, Erie, Pa., on the brief), for Mildred A. Sauers and others.

Before FORMAN, SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

May a defendant who properly impleads third-parties on the ground that

they are "or may be liable to him for all or part of the plaintiff's claim against him", Fed.R.Civ.Pro. 14, also include, in the absence of an independent jurisdictional basis, a separate claim for property damages which, although not the subject of the original plaintiff's claim, arose out of the same occurrence? This is the specific question posed by this appeal from the district court's dismissal of the third-party plaintiff's claim against the third-party defendants for damages to its locomotive.

Claiming damages for personal injuries sustained as a result of a train-truck collision at a private crossing in Crawford County, Pennsylvania, plaintiff, a railroader, instituted suit against Erie Lackawanna Railroad Company under the Federal Employers' Liability Act, 45 U.S.C. § 51, and against a second defendant on the theory of common law negligence.[1] Both Erie and its co-defendant proceeded to name as third-party defendants the estate of the truck driver, the owner of the truck, and the company to which the truck allegedly was leased. In addition to its claim for contribution or indemnification under Rule 14, Erie's third-party Complaint included a separate claim for damages to its train in the amount of $5,041. The third-party defendants moved to dismiss the claim for train damage, asserting a lack of diversity of citizenship, the absence of a federal question, and an insufficient amount in controversy. The district court granted the motion to dismiss[2] and Erie appealed.

■ Erie did not argue below, and does not contend here, that its separate claim is based on an independent federal jurisdictional ground. Rather, it was, and continues to be, Erie's position that the claim is a "compulsory counterclaim" which is "ancillary to the main cause of action" and which, therefore, may survive in the absence of independent jurisdiction. The flaw in this approach is simply that the claim has been mislabeled. A counterclaim must, by definition, arise "out of the transaction or occurrence that is the subject matter *of the opposing party's claim*". Fed.R. Civ.Pro. 13(a) (emphasis supplied). Erie's claim against the third-party defendants was not in response to an "opposing party's claim" since none of the "opposing" third-party defendants lodged any claim against Erie.[3]

That the wrong terminology has been employed, however, is not fatal. Although the district court could have required Erie to replead to correct the error, see Murray v. Haverford Hosp. Corp., 278 F.Supp. 5 (E.D.Pa.1968), it chose instead, following its rejection of the counterclaim theory, to consider what it believed Erie was "really asserting". We will not fault the court for disregarding such technical error. See Falciani v. Philadelphia Transp. Co., 189 F. Supp. 203 (E.D.Pa.1960). Indeed, we

---

1. The co-defendant was S. J. Groves and Sons Company, the party allegedly responsible under a written agreement with defendant Erie for the safety of the private crossing at which the collision occurred.

2. The district court treated the claim as one based on pendent jurisdiction. Ruling that it had discretion to dismiss the claim, it reasoned:

 Because the primary claim in this case is a suit by a railroad employee under the F.E.L.A., we feel that ancillary jurisdiction of other claims should be refused, as was stated in Gibbs v. United Mine Workers, * * * [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, 1966].

 "* * * there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed. R.Civ.P. 42(b). If so, jurisdiction should ordinarily be refused. (p. 727 [86 S.Ct. p. 1139])."

3. It is possible that Erie's confusion resulted, in part, from a 1966 district court decision which characterized a similar claim as "a type of permissive counterclaim." Gebhardt v. Edgar, 251 F.Supp. 678, 681 (W.D.Pa.1966). For the reason set forth in the text, this language in *Gebhardt* must be considered to be erroneous.

too deem it essential that the claim not be improperly characterized, because from a particular characterization may flow peculiar procedural and jurisdictional consequences.

 At least one district court case has held that a claim by a third-party plaintiff against a third-party defendant may be labeled a cross-claim pursuant to Fed.R.Civ.Pro. 13(g). Fogel v. United Gas Improvement Co., 32 F.R.D. 202 (E.D.Pa.1963). Rule 13(g) provides in part:

> A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

Were we to take the view that Erie's claim for train damage is a cross-claim, and assuming that it is sufficiently related to the original action,[4] we would experience no difficulty in ruling that the claim is ancillary to the main claim and, as such, requires no independent jurisdictional basis. As stated in 1 Moore's Federal Practice ¶0.90 [3]:

> When a federal court has jurisdiction over the main cause of action, it also has jurisdiction over any proceedings ancillary to that action, regardless of the money involved, the citizenship of the parties, or the existence of a federal question in the ancillary suit. * * *

* * * * * *

Since cross-claims, compulsory counterclaims, and third party claims arise out of the main cause of action, they are ancillary to that action, and if there is federal jurisdiction over the main action, there is jurisdiction over these ancillary claims. * * * (Footnotes omitted.)

This principle has been recognized by other commentators[5] and appears to be well settled in the courts.[6]

In *Fogel, supra*, 32 F.R.D. at 204, the court dealt with the argument that cross-claims under Rule 13(g) cannot apply as between third-party litigants since they are not "co-parties" within the meaning of the Rule.

> This contention is incorrect. "Co" is a prefix which "signifies in general *with, together, in conjunction, jointly.*" (Webster's Unabridged Dictionary, 2nd ed.). Even though [the third-party defendant's] position in the case is somewhat different from the positions of the original defendants, it is a co-party within the meaning of Rule 13(g).

(Emphasis by the court.)

A contrary result was reached, however, in a more recent case, also in the Eastern District of Pennsylvania, in which defendants attempted to style third-party claims as cross-claims. In Murray v. Haverford Hosp. Corp., *supra*, 278 F.Supp. at 6–7, the court reasoned: "[W]e believe that Rule 13(g) was intended to regulate cross-claims between 'co-parties' and contemplated that such cross-claims should be asserted

---

4. A cross-claim—which must arise "out of the transaction * * * that is the subject matter * * * of the original action"—traces its ancestry to the crossbill in equity which permitted a defendant to file a bill against another defendant if it dealt with "matters in question in the original bill" and did not introduce "new and distinct matters." James, Civil Procedure § 10.14, at 472.

5. Barron & Holtzoff, 1A Federal Practice and Procedure § 397, at 603 (1960); Wright, Federal Courts, § 80, at 307 (Hornbook Series 1963).

6. *E. g.*, R. M. Smythe & Co. v. Chase Nat'l Bank, 291 F.2d 721, 724 (2 Cir. 1961); Childress v. Cook, 245 F.2d 798, 802–805 (5 Cir. 1957); Glens Falls Indem. Co. v. United States ex rel. and to Use of Westinghouse Elec. Supply Co., 229 F.2d 370, 374 (9 Cir. 1955); Coastal Air Lines v. Dockery, 180 F.2d 874, 877 (8 Cir. 1955); Coyne v. Marquette Cement Mfg. Co., 254 F.Supp. 380, 388 (W. D.Pa.1966). *Cf.* Shapiro v. Gulf, Mobile & Ohio R. R., 256 F.2d 193 (7 Cir. 1958).

against parties having like status, such as co-defendants." (Footnote omitted.) *See also* Frommeyer v. L. & R. Constr. Co., 139 F.Supp. 579, 586 (D.N.J.1956)

It is this latter conclusion that we find to be persuasive. It seems untenable to us to characterize third-party litigants as co-parties since their actual and only relationship to each other throughout the action is that of plaintiff and defendant. While co-parties—those sharing "like status" initially—become opposing parties on the cross-claim, third-party litigants become adverse upon service of the third-party complaint.[7] Thus they are opposing parties *prior* to the assertion of the additional claim by the third-party plaintiff, and, indeed, retain that status throughout the case.

This relationship is highlighted by the impact of the 1948 amendment to Rule 14. Prior to the amendment, a third-party could be impleaded not only if, as the rule now provides, he was thought to be liable to the defendant, see note 10, *infra*, but also on the ground that he was directly liable to the plaintiff.[8] Under this earlier version of the rule, it is arguable that a third-party defendant impleaded on the ground of direct liability to the original plaintiff would occupy the same status as the original defendant. Under such circumstances, the third-party litigants would be assuming the same legal stance vis-a-vis the plaintiff and would conceivably qualify as co-parties. Rule 14(a) now, of course, limits the impleaded party to one "who is or may be liable to [the original defendant] for all or part of the plaintiff's claim against him," and, in so doing, establishes third-party litigants as opposing parties.

■ The drafters of the Federal Rules were not simply acting as a collective Linnaeus of the law, engaging in classifications for their own sake. Although it is true that "labels have no *substantive* bearing on the content of a claim",[9] the classification of a claim as a cross-claim will have a very real jurisdictional bearing. See Moore's Federal Practice, ¶ 0.90 [3], *supra*. Moreover, the denomination of a claim will determine the procedures available for asserting the claim.[10] And even though recovery under Rule 13(g) may proceed on the same basis as recovery under Rule 14,[11] Rule 13(g) unequivocally requires that cross-claims be asserted between

---

7. Indeed, until the third-party complaint is served, the third-party defendant is not a party at all. Under Rule 14, he may be impleaded only if he is "not a party to the action" already.

8. Barron & Holtzoff, 1A Federal Practice and Procedure § 421, at 641 (1960). *See, e. g.,* Adam v. Vacquier, 48 F.Supp. 275, 276 (W.D.Pa.1942) ; Moreno v. United States, 120 F.2d 128, 130 (1 Cir. 1941). "The provision that a defendant could implead a third person on the ground that he was liable to the plaintiff was omitted so that the plaintiff no longer faced the possibility of being tendered a defendant other than one of his choice." Feldman, A Puzzle Under the Federal Interpleader Rule, 34 Tul.L.Rev. 77, 79 (1959). *Compare* Pennsylvania R.Civ.Pro. 2252 (12 P.S.Appendix) permitting an original defendant to join as an additional defendant any person who may be alone liable, or liable-over, or jointly or severally liable.

9. Murray v. Haverford Hosp. Corp., 278 F.Supp. 5, 6 (E.D.Pa.1968) (emphasis by the court).

10. Rule 14(a) mandates the following procedures, among others :

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause *a summons and complaint* to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. *Otherwise he must obtain leave on motion upon notice to all parties to the action.*

(Emphasis supplied.)

Under no circumstances does Rule 13(g) require a summons or complaint to be filed by the cross-claimant.

11. Rule 14(a) requires, and Rule 13(g) permits, that the claim be against one who "is or may be liable" to the claimant for "all or part" of a claim asserted against him.

"co-parties." Because Erie, as third-party plaintiff, and the third-party defendants are opposing parties rather than co-parties, no claim between them may be characterized as a cross-claim.

The jurisdictional validity of Erie's claim for liability-over has not been questioned and appears not to be in doubt. Dery v. Wyer, 265 F.2d 804 (2 Cir. 1959). A claim which is cognizable under Rule 14 is ancillary to, and thus jurisdictionally dependent upon, the jurisdiction of the original plaintiff's main claim.[12] It is arguable that Erie's separate claim for locomotive damage may be treated as a third-party claim under Rule 14.

Noland Co. v. Graver Tank & Mfg. Co., 301 F.2d 43 (4 Cir. 1962) arose as an action by a general contractor against its subcontractor for the difference between the actual cost of a water tank and the subcontractor's original bid price on a tank that was not delivered. The subcontractor impleaded its supplier for the amount of its liability to the general contractor, and added a claim for the profit it had anticipated on the supplier's bid price on the tank. The court framed the "basic question" as "whether under Rule 14 * * * a third-party plaintiff can recover from a third-party defendant a sum greater than that sued for by the original plaintiff". Id. at 49. In permitting additional recovery for anticipated profit under

Rule 14, Judge Boreman rejected the application of two district court decisions, Geborek v. Briggs Transp. Co., 139 F. Supp. 7 (N.D.Ill.1956) and Liberty Mut. Ins. Co. v. Vallendingham, 94 F. Supp. 17 (D.D.C.1950), on the ground that they involved initial determinations that the third-party defendants were not properly in the case.[13] He stated:

> It is important to bear in mind that the precise issue here is whether, under Rule 14, a third-party defendant, *once made a party to an action*, can be proceeded against by the third-party plaintiff upon a claim closely related to, yet different from and for an amount in excess of, the original plaintiff's claim.

*Id.* (emphasis by the court).

Acknowledging that a third district court case, United States v. Scott, 18 F. R.D. 324 (S.D.N.Y.1955), was "factually apposite", the *Noland* court found the case "not controlling" and "not * * * persuasive in determining the question here". *Id.*[14]

The court's analysis proceeded on the theory that "[o]ne of the primary objectives of third-party procedure is to avoid circuity and multiplicity of actions". *Id.* at 50. And although it recognized that "[s]ituations might arise where independent claims between [third parties] * * * could not be litigated expeditiously and without serious or seemingly endless complications," *id.*, such a situ-

12. 1 Moore's Federal Practice ¶ 0.90 [3], *supra*; Barron & Holtzoff, 1A Federal Practice and Procedure § 424, at 650 (1960) : ("[I]f the court has jurisdiction of the principal action, it needs no independent grounds of jurisdiction to entertain and determine the defendant's third-party claim.")

13. In each case the court found no legal basis for liability on the part of the third-party defendant to the third-party plaintiff. Both cases specifically rejected, however, the argument that Rule 14 will allow recovery of damages greater in amount than those sought by the original plaintiff in his claim. In *Vallendingham* the court expressly ruled: "Rule 14 is limited to cases in which the third party plaintiffs seek to recover from the third party

defendant on a secondary liability arising out of the plaintiff's claim against the original defendant." 94 F.Supp. at 18.

14. It has been suggested that *Scott* and *Noland* were both correctly decided and may be reconcilable. In the former case "it is arguable that * * * the defendant had two claims against the third-party defendant," while in *Noland* "[i]t would seem * * * that defendant actually had only one claim against the supplier, that for non-delivery, and indeed that the rule against 'splitting a cause of action' might have barred him from subsequent suit for lost profits. * * *" Barron & Holtzoff, 1A Federal Practice and Procedure (Supp.1969) § 426, at 42–43.

ation was not found to be present in *Noland*. The third-party defendant had conceded that the profit issue was "not, in any way, complicated; that a determination thereof would not have been unduly burdensome to any party litigant; that the litigation would not have been appreciably prolonged by such determination." *Id*. On these considerations rested the conclusion that Rule 14 would support the additional claim for damages beyond those sought in the claim for liability-over.[15] *See* Crompton-Richmond Co., Factors v. United States, 273 F.Supp. 219, 221 (S.D.N.Y. 1967). ("It is * * * no obstacle that affirmative relief is sought against the proposed third-party defendants, above the amount claimed by [the original plaintiff].")

Our research has failed to disclose, however, any other decision in which a court has squarely accepted the proposition that Rule 14 applies to claims other than those grounded on the theory that the third-party defendant "is or may be liable to [the third-party plaintiff] for all or part of the plaintiff's claim against him". Indeed, all other cases which have considered the issue, including those distinguished or disapproved in *Noland*, have taken a contrary view. In C. W. Humphrey Co. v. Security Aluminum Co., 31 F.R.D. 41, 44 (E.D.Mich. 1962), for example, the court concluded: "Rule 14 limits third-party complaints to actions-over for part or all of the plaintiff's claim. It does not allow actions for other damages." *See also* United States v. Joe Grasso & Son, Inc., 380 F. 2d 749 (5 Cir. 1967); United States Fidelity & Guar. Co. v. American State Bank, 372 F.2d 449 (10 Cir. 1967); City of Philadelphia to Use of Warner Co. v. Nat'l Surety Co., 140 F.2d 805 (3 Cir. 1944); De Haas v. Empire Petroleum Co., 286 F.Supp. 809 (D.Colo.1968). As

stated in 3 Moore's Federal Practice ¶ 14.07, at 512:

> But a defendant cannot assert an entirely separate claim against a third party under Rule 14, even though it arises out of the same general set of facts as the main claim; there must be an attempt to pass on to the third party all or part of the liability asserted against the defendant.

Although we are sympathetic with much of the rationale in *Noland,* and find the result therein desirable, we too must reject the view that Rule 14 permits recovery of damages in excess of, or different from, that sought by the original plaintiff in his main claim.

▆ That the propriety of Erie's claim is not readily discernible from the literal text of Rules 13 and 14 does not end our inquiry. Both as a matter of policy and of logic, Erie should be permitted to assert its separate claim in this action, assuming that the interests of judicial economy, convenience, and fairness to the parties will thereby be served.[16] What remains for us to determine is whether there exists a procedural approach and a jurisdictional basis for asserting the claim.

Rule 18(a), as amended in 1966, states explicitly that "[a] party asserting a claim to relief as * * * [a] third-party claim, may join, either as independent or as alternate claims, as many claims * * * as he has against an opposing party." This language, standing alone, is susceptible of an interpretation that such joined claims must be limited to those typically cognizable under third-party practice. We are persuaded, however, that the amendment was intended to permit the inclusion of such affirmative claims for relief as requested here by Erie. The rule assumes, of course,

---

15. The *Noland* case, although relevant here because of its allowance of the additional claim under Rule 14, did not involve a jurisdictional problem. The citizenship of the third-party litigants was diverse.

16. In his opinion below, Judge Weber recognized the importance of these considerations. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Note, 81 Harv. L.Rev. 657 (1968).

the existence of jurisdiction over the claim, for the Federal Rules do not extend the jurisdiction of the federal courts. But we are also convinced that the concept of ancillary jurisdiction is broad enough to encompass this claim.

There is formidable authority to support these conclusions. The Advisory Committee On Rules made the following comment to the 1966 amendment to Rule 18(a), 28 U.S.C. Rule 18(a) (1970 Supp.):

> The Rules "proceed upon the theory that no inconvenience can result from the joinder of any two or more matters in the pleadings, but only from trying two or more matters together which have little or nothing in common." Sunderland, The New Federal Rules, 45 W.Va.L.Q. 5, 13 (1938); see Clark, Code Pleading 58 (2d ed. 1947). Accordingly, Rule 18(a) has permitted a party to plead multiple claims of *all types* against an opposing party, subject to the court's power to direct an appropriate procedure for trying the claims. See Rules 42(b), 20(b), 21.

(Emphasis supplied.)

In discussing the 1966 amendment Professor Charles Alan Wright has been most emphatic: "Thus it is now clear that, as a matter of pleading, once a defendant has asserted a claim suitable for impleader under Rule 14((a), he may join with it any and all of his other claims against the third party defendant". Wright, Federal Courts § 76, at 334 (1970). Speaking before the Judicial Conference of this circuit in 1966, he discussed the jurisdictional issue:

> Now we are going to allow the original defendant to join with his third-party claim some other claim which he has. Can this come under the same rubric of ancillary jurisdiction, or does it have to have an independent jurisdictional ground of its own?
>
> On this the rule is wholly silent. The rules quite properly do not purport to speak to jurisdictional questions. They set out procedures, and you are going to have to apply your jurisdictional thinking, according to your best lights.
>
> My hope would be that in determining this the court would look to the factual relation between the third-party claim and the independent claim of the defendant. If the original defendant * * * adds some claim * * * [from] some other transaction some years before * * *, then I would think that he would have to have independent jurisdictional grounds, and that the venue would have to be independently proper for him to assert this. Otherwise, we would be bootlegging into the federal courts things which the Congress said should not be there.
>
> But if the factual relationship is as close as in the example I originally put, where the claim * * * arises out of the very transaction which is the subject of the third-party claim, then it seems to me that within the existing knowledge about ancillary jurisdiction, you ought to be able to say, "Yes, let's go ahead."

42 F.R.D. 437, 560–561.

Persuasive also is the analysis in Barron & Holtzhoff, 1A Federal Practice and Procedure § 426, at 43–44 (Supp.1969):

> Thus defendant properly asserts a third-party claim against a thid-party defendant. On well-settled principles, this claim is treated as ancillary, and need not independently meet the tests of jurisdiction and venue. Under amended Rule 18(a), the original defendant may join with the claim for liability over any other claim which he has against the third-party defendant. The joinder is proper as a matter of pleading. If the additional claim arises out of the same transaction or occurrence as the claim for liability over—and thus, by hypothesis as the original claim of plaintiff against defendant—it would seem, by analogy to principles settled in other areas, that the additional claim too should be

treated as ancillary for purposes of jurisdiction and venue.
(Footnotes omitted.)

In requiring that the claim arise out of the same transaction or occurrence as the claim for liability-over, the "analogy to principles settled in other areas" would seem to refer to the principles governing compulsory counterclaims. Fed.R.Civ.Pro. 13(a).[17] A similar approach to the jurisdictional issue was suggested by another commentator, prior to the 1966 amendment of Rule 18(a):

> Some cases hold that a defendant may not assert a claim for his own injuries under Rule 14 as it now stands. Therefore, it is believed that the rule should be amended so as to allow such a claim to be asserted because the purpose of Rule 14 is to avoid the cost of two actions involving the same evidence. Should such an amendment be made, would a defendant's claim for his own damages have to independently meet the jurisdictional requirements? There is at least as much reason for treating such a claim as

ancillary as there is for treating a claim for contribution or indemnity as ancillary because both claims grow out of the same core of facts.

> If a defendant asserts a claim against a third-party defendant for contribution or indemnity, the defendant should be able to join with this claim a claim for damages for injuries which he received in the same transaction or occurrence. Since the third-party defendant is properly in the action, the original defendant should be able to plead all claims that arise out of the same transaction or occurrence in order to prevent several suits between the same parties on the same facts. Fraser, "Ancillary Jurisdiction and the Joinder of Claims in the Federal Court,"

33 F.R.D. 27, 39–40.

For the purposes of jurisdiction, therefore, we believe that Erie's separate claim should survive, whether its claim be characterized as ancillary to the main claim or ancillary to the third-party claim which itself is ancillary to the original claim against the railroad.[18]

---

17. See note 61.9 to § 426: "The different rules with respect to counterclaims, it is thought, do not rest on the element of compulsoriness but on the fact that a compulsory counterclaim does arise out of the same transaction or occurrence as the original claim."

18. The district court styled the claim as "'pendent' to the 'ancillary' claim for contribution or indemnity." Whether the claim is characterized as "pendent" or "ancillary" is not controlling. These terms have not been forged into separate vessels with different contents:
> But supplementing express statutory grants, the federal courts have a jurisdiction known variously as ancillary, auxiliary, or pendent that makes it possible for the federal courts to function effectively in administering the jurisdiction expressly conferred upon them.
1 Moore's Federal Practice ¶ 0.60 [1].
It has been asserted that "[p]endent jurisdiction is a species of ancillary jurisdiction." Note, 81 Harv.L.Rev. 657 n. 1. The same source states that the doctrine of pendent jurisdiction has been delineated "primarily in federal question cases," but

notes that it "often has been applied in disparate situations," such as in diversity cases. *Id.*, citing authorities. *See* Newman v. Freeman, 262 F.Supp. 106 (E.D. Pa.1966). Moreover, the terms pendent and ancillary have been used interchangeably by the courts. *See, e. g.*, Borror v. Sharon Steel Co., 327 F.2d 165 (3 Cir. 1964). At least two commentators, however, have taken the view that pendent jurisdiction is a concept which applies solely where federal and state claims are involved.
> "Pendent jurisdiction" as the term has been used in this section, refers only to the joinder of state and federal claims, though the concept is not unrelated to the doctrine of ancillary jurisdiction applicable in diversity litigation. The pendent jurisdiction concept applies only where the same parties are involved on the state and federal claims. Wright, Federal Courts, § 20, at 65 (1970).
> There is, however, another aspect of ancillary jurisdiction, sufficiently distinctive that it is frequently referred to by a different name, "pendent jurisdiction." This deals with the joinder by plaintiff of multiple claims, of which

Because the claim arises out of the same set of facts as the claim for liability-over, and since the third-party defendants could assert against Erie a claim arising out of the transaction or occurrence which is the subject of the third-party claim, we find compelling the analogy to a compulsory counterclaim. Under these circumstances, we conclude that Rule 14 must be read in conjunction with Rule 18(a), as amended, and read together, these two rules give the third-party plaintiff a proper procedural route for asserting his affirmative claim for damages.

In so concluding, we realize that we are furrowing new ground insofar as appellate interpretation of these rules is concerned. Further, we appreciate that all commentators are not in agreement with this approach.[19] We suggest that it would have been preferable, at the time the Advisory Committee fashioned the broad amendatory language of Rule 18(a) in 1966, to have amended the language of Rule 14 to take cognizance of the sort of claim asserted here. We are persuaded, however, that the reasoning heretofore set forth, including the forceful expression of the Advisory Committee that the amendment now permits a party "to plead multiple claims of all types against an opposing party" compels the conclusion we reach here.

The district court utilized the following reasoning in dismissing Erie's claim:

In the present case we do not believe that fairness to the parties will be served by allowing defendant's independent claim to be tried together with plaintiff's F.E.L.A. claim. The F.E.L.A. statute * * * provided standards for the determination of liability that were more liberal than the common law standards, it abolished or limited certain common law defenses. Thus defendant railroad's liability to plaintiff employee is measured by different standards than would be applied to any liability of third-party defendants for damage to railroad's locomotive. * * *

Because the primary claim in this case is a suit by a railroad employee under the F.E.L.A., we feel that ancillary jurisdiction of other claims should be refused. * * *

To be sure, a district court has a certain discretion in deciding how to dispose of multiple claims in a single action. But that discretion is not unlimited and cannot be enlarged simply by characterizing a claim as "pendent" and invoking the broad language of United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) which arose in a different context and involved additional considerations.[20]

We are not persuaded in our analysis by the lower court's conclusion that the theory of liability would involve different legal standards and theories than those applicable to plaintiff's F.E.L.A. claim. This objection would apply, as well, to Erie's third-party claim which has not been assailed by the third-party defendants or questioned by the district court. Whether the third-party defendants are liable over to Erie will depend on the application of common law principles of negligence—not on the F.E.L.A. which will control the issue of liability only as between the plaintiff and Erie. Thus, the allowance of the separate claim will not have the effect of introducing an additional legal theory into the case. Moreover, plaintiff has already injected traditional negligence issues into the case by virtue of his claim against Erie's co-defendant on the basis of com-

one raises a federal question * * *. Barron & Holtzoff, 1A Federal Practice and Procedure, § 23, at 97 (1960).

19. 3 Moore's Federal Practice ¶14.07, at 512.

20. Our research has uncovered no case applying the *Gibbs* doctrine to a situation in which ancillary jurisdiction had already attached, and the multiple claims were contained in secondary pleadings in the form of a compulsory counterclaim, a cross-claim, or a third-party complaint.

mon law negligence. In this situation, it is difficult to perceive any prejudice to the plaintiff. And aside from any dispute as to the amount of damage to the train, the third-party defendants, in defending against the additional claim, will be asserting the same defenses against Erie as it would if no additional claim were involved and only a simple third-party claim were present.

Under the facts of this case, therefore, we are convinced that a proper exercise of the district court's discretion was limited to the power to order a separate trial of the claim in accordance with Rule 42(b). See the Advisory Committee's Notes to the amendment of Rule 18(a), *supra*, contemplating the joinder of all types of claims "subject to the court's power to direct an appropriate procedure for trying the claims."

The judgment of the district court will be reversed and the cause remanded for further proceedings consistent with the expressions contained in this opinion.